[Civ. No. 6164. Fourth Dist. June 28, 1960.]

GRACE C. McCHESNEY, Appellant, v. H. FRANKLIN McCHESNEY, Respondent.

F. V. Lopardo and James L. Focht, Jr., for Appellant.

Sullivan & Sullivan and Denis E. Sullivan for Respondent.

SHEPARD, Acting P. J.—This is an action for divorce in which plaintiff, appellant herein, was given judgment against defendant, respondent herein, including custody of their minor child, support for herself and the child, all the community property, and liens on defendant's separate property to secure payment of support. She appeals.

From the record before us, it appears that defendant husband is the sole beneficiary of a trust valued at somewhere between $218,000 and $255,000. Some of the testimony indicates the difference in value may possibly be accounted for by invasions of the trust by the beneficiary. Apparently most of defendant's income for many years has been derived from the trust. That the trust is the separate property of respondent is not seriously challenged by appellant. Apparently for several years prior to the divorce trial the parties had been living on a scale of expense far above their income. Respondent's net income for the year immediately preceding the decree was estimated at $10,000, with the gross amount at about $13,000.

The parties married in Pennsylvania in 1935, and did not come to California to reside permanently until about 1953. After a period of renting, they finally bought a home in

La Jolla, the title being taken in both their names as husband and wife. Apparently a substantial part of the purchase price was from the separate property of the husband. Sometime later this first home was sold, and a new one purchased, the title being taken by the parties as joint tenants.

Plaintiff asked in her complaint for $1,000 per month support. She testified she needed $2,000 per month to live on. The court awarded her $470 per month for herself and $230 per month for support of the minor son of the parties, whose custody was awarded to her.

The evidence shows that a large share of the furniture was inherited by defendant from his father. All of such inherited furniture was decreed by the court to be the separate property of the defendant. All furniture purchased by the parties after the commencement of the marriage relation was decreed by the court to be community property and awarded entirely and absolutely to plaintiff. A lien was ordered against defendant's interest in the home and against defendant's furniture to insure payment of alimony and support payments. The automobiles mentioned in the evidence, a Cadillac in possession of plaintiff and a Buick in possession of defendant, were orally awarded to the party in possession of same. Evidently the parties voluntarily carried out the oral instruction of the court between themselves as such automobiles are not mentioned in the judgment and no complaint is made about them on this appeal.

Two bank accounts were briefly mentioned in the evidence, one having a balance of $50. As to the other bank account, no questions were asked about it, and there is no evidence as to when it was opened or whether or not any substantial amounts were ever deposited in it, or whether any balance of any kind remained in the account at the time of the filing of the action or the trial thereof. The account containing $50 was the only one about which evidence was adduced, and it was decreed to be community property and awarded entirely to plaintiff.

Some life insurance policies on defendant's life were mentioned in the evidence. There was no evidence identifying them, nor showing from what source the premiums had been paid, whether or not they were term policies or whether or not they had any value whatever. All exhibits were withdrawn from the file by stipulation of counsel at the end of the trial and are not in the record before us.

### Amount Awarded for Alimony and Child Support

Appellant complains that the amount of the award for support of herself and her minor son was, as a matter of law, insufficient under the evidence, and that the court abused its discretion in not granting her a greater amount. She contends the trial court limited her to bare necessities, instead of making an award which would allow her to continue to live on the scale which the parties had been maintaining prior to separation. ▪ We recognize that the trial court, in making its award, was not limited by the amount needed for bare necessities. (*Arnold* v. *Arnold,* 76 Cal.App.2d 877, 885 [8] [174 P.2d 674]; *Pope* v. *Pope,* 102 Cal.App.2d 353, 371 [6] [227 P.2d 867].) ▪ However, an examination of the whole evidence convinces us that it amply supports the decision of the court awarding the wife $5,640 annually for her own support and maintenance, and $2,760 for support of the child, or a total of $8,400 out of an income of $10,000 per year. It is true that defendant is attempting to gain a foothold as a real estate agent and that he may well accumulate a far greater earning power in the future. On the findings of the court of an income of $10,000 per annum, it appears that 84 per cent thereof was awarded to plaintiff. We find no merit in the contention that the award was insufficient as a matter of law. Taken as a whole, we find nothing in the oral remarks of the trial judge at the close of the trial to indicate that he did not fairly take into account the style of living to which the parties were accustomed. We find nothing in *Newell* v. *Newell,* 146 Cal.App.2d 166 [303 P.2d 839], and other cases cited by appellant, contrary to our views.

### Joint Tenancy Title of the Home

The evidence as to the joint tenancy title of the home is sufficient to support the conclusions that the title was taken in joint tenancy by the parties with full knowledge on the part of plaintiff and with her consent, and that she understood the meaning of that title. The testimony of defendant, fairly read, can be construed as a denial that he ever agreed with plaintiff that it would be community property. In response to the question as to whether or not he had told plaintiff the title would be the same kind of title as that in which their former home was held, he said: ''No, I don't recall telling her.'' Several other questions and answers were to a similar effect. ▪ It is not within our province to reweigh conflicting evidence. The duty of weighing conflicting evidence rests with the trial court. ▪ It is true that if, under

competent evidence, the court believes the parties made an oral agreement to transmute the property from a separate or a joint tenancy estate to one in community property, such agreement will be given recognition. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [3-4] [146 P.2d 905]; *Woods* v. *Security-First Nat. Bank*, 46 Cal.2d 697, 701 [1] [299 P.2d 657].) However, it is the duty of the trial court to weigh the evidence and if different conclusions might reasonably be drawn from such evidence, this court will not interfere with the judgment of the trial court based on sufficient evidence. (*Pope* v. *Pope, supra*, 362.) The cases of *Salveter* v. *Salveter*, 206 Cal. 657 [275 P. 801]; *Estate of Cesare*, 130 Cal.App.2d 557 [279 P.2d 607]; *Estate of Duncan*, 9 Cal.2d 207 [70 P.2d 174]; *Cummins* v. *Cummins*, 7 Cal.App.2d 294 [46 P.2d 284]; and other authorities cited by appellant, do not in any way conflict with the foregoing statements, in fact, fairly read, they affirmatively support the views hereinbefore expressed.

### Furniture Inherited By Husband

Appellant contends that respondent, by oral statement, transmuted into community property the furniture inherited from his father, which furniture the court found to be the separate property of the husband. Plaintiff testified that shortly after the probate distribution to defendant of his father's estate, defendant made certain statements to plaintiff that she should dispose of the furniture as she saw fit, and from these statements plaintiff contends there was an inference that defendant intended such transmutation as to the furniture. This testimony was somewhat equivocal. For example, plaintiff testified at the close of this particular portion of the testimony as follows:

"Q. . . . Mrs. McChesney, I am just simply asking you whether or not you took from the things he said to you on that occasion or any subsequent occasion that he was giving up any rights of ownership that he might have in that furniture.

"A. No, but certainly I was led to believe that I was given the full right to do anything I pleased with it."

While it is possible, from the testimony of plaintiff, that the court might have concluded the parties intended a transmutation into community property of this furniture so inherited from defendant's father, we think the court was not compelled as a matter of law to so conclude. As was said in *Linville* v. *Linville*, 132 Cal.App.2d 800, 802 [2] [283 P.2d 84]: "Whether the statements of respondent and the conduct of

274

appellant indicated an intent on the part of the latter to transmute his separate property into a community interest with respondent was a question for the trier of fact.''

## INSURANCE POLICIES

██ Plaintiff testified she ''believed'' there were two life insurance policies in existence. Plaintiff did not know when they were taken out but thought it was early in their married life, perhaps in 1940 or 1941 in Pennsylvania, and that she believed herself to be the beneficiary. This is the only evidence that counsel has pointed out and the only evidence we have been able to find in any way relating to these alleged insurance policies. As has hereinbefore been stated, all exhibits were withdrawn by stipulation of counsel at the close of the court trial. Whether the policies were ever identified or brought to court does not show in the record. The court evidently received some kind of information about them from a source not disclosed, and found that there were three policies, two in a face amount of $5,000 each and one in a face amount of $10,000, and that plaintiff was not the beneficiary in any of them. There is nothing to indicate whether or not the policies were single premium, or term or annual premium policies. There is nothing to indicate whether they were in default, had expired, or what premiums, if any, had ever been paid. The evidence does not show that any of the policies have any present value whatsoever.

Defendant underwent extensive cross-examination by plaintiff's counsel, but was never asked one word about insurance. No request appears to have ever been made for the production of the policies. The judgment itself does not specifically mention the policies, merely decreeing what is community property and awarding all thereof to plaintiff. Since counsel did not see fit to inquire about the policies nor to introduce or seek out any evidence with relation thereto, after having ample opportunity to do so, making no motion to reopen the case for further evidence on this subject, we must conclude that plaintiff deemed them inconsequential. Under the record before us, we do not feel able to accord them a greater consequentiality than was accorded them by counsel for plaintiff. We will not reverse a judgment on inconsequential matter where there is no showing of actual prejudice. (*Arnold* v. *Arnold*, 76 Cal.App.2d 877, 880 [1] [174 P.2d 674].)

## COMMERCIAL BANK ACCOUNT

██ Appellant complains that the court committed error in holding that an alleged commercial bank account of defend-

ant in the First National Trust and Savings Bank of San Diego was not community property. She points to no evidence that there was any money in that account. Counsel for plaintiff had ample opportunity to inquire about that account, but failed entirely to do so. The record does not show anything whatever about the account, when it was opened, by whom, whether it contained any funds at the time the action was filed or at the time of the trial, or any other time. We cannot elevate it to a greater importance than that given it by plaintiff's counsel at the trial. We are unable to charge the trial court with prejudicial error in this regard.

### CONFLICT IN FINDINGS

Appellant complains of inconsistencies in the findings because the court gave her all the furniture purchased during the marriage relation, even though defendant testified it was all purchased from his separate funds, but that the court inconsistently failed to give her the insurance policies. We have expressed our views on the insurance policies. It is true that during a large share of the marriage relation most of the income on which the parties subsisted was from the separate property of the husband. It is true that under the evidence the court might possibly have decided that the furniture purchased with separate funds was the separate property of defendant. It was the trial court's duty to weigh the evidence on that point. The decision was for plaintiff, respecting which she cannot complain. Its decision regarding the furniture did not bind it as to different evidence on different matters. We find no merit in the contention.

Judgment appealed from is affirmed.

Coughlin, J., and Shea, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 24, 1960.

---

*Assigned by Chairman of Judicial Council.