[Civ. No. 46672. First Dist., Div. One. Apr. 16, 1980.]

In re the Marriage of GUDRUN and HENRY J. RICHMOND.
GUDRUN RICHMOND, Appellant, v.
HENRY J. RICHMOND, Appellant.

## Counsel

Diana Richmond for Appellant Wife.

Rohde & Gamer and Daniel A. Gamer for Appellant Husband.

## Opinion

**ELKINGTON, J.**—Plaintiff Gudrun Richmond (hereafter for convenience, Gudrun) appeals from a portion of an order modifying downward, spousal support from Henry Richmond (for convenience also, Henry), in an action she had commenced to establish a State of New York divorce judgment. The portion of the order at issue provided the following: "Said obligation for spousal support shall continue through the month of September 1981, at which time spousal support shall forever terminate and the jurisdiction of this Court over the issue of spousal support shall terminate, unless prior to September 30, 1981, Petitioner [Gudrun] makes a showing of good cause to extend spousal support beyond that date."

Henry cross-appeals from a portion of the order immediately preceding that appealed by Gudrun. It recites that: "Effective July 1, 1978, Respondent [Henry] shall pay to Petitioner [Gudrun] as and for spousal support the sum of $200.00 per month, payable on the first day of each month."

The evidence before the California superior court, June 23, 1978, may reasonably be condensed to the following:

At the time of its dissolution in New York, January 21, 1976, the marriage of the parties had endured 16 years, and Henry was ordered to pay spousal support of $542 per month to Gudrun, who was unemployed. The marriage had been childless, and Gudrun was then about 44 years old. At the time of the superior court hearing, June 23, 1978, Henry had been unemployed for about two months. His income from unemployment insurance and interest and dividends totaled around $575 per month. His previous income had been "a *gross* of $2,297 per month." Gudrun had been unemployed throughout the marriage, but she had been able to acquire an advanced education during it. She held a master's degree in education which she had earned with a "4.0" average. She was also a "Ph.D candidate," a degree which would be awarded her when she "finished the dissertation," a project upon which she hadn't "been able to work...for about a year or so." Her field was "German literature." She had sought employment, but only "in my field." During the previous year she had held a teaching fellowship the "net earnings [of which for a time] were $448" monthly. And she had more recently been assigned a summer college course "starting the 19th, which is this week, and I got a call Friday before that they had to close some of its own classes because of Proposition 13." But on the whole her current income prospects appeared quite small, hardly in excess of a few thousand dollars a year.

Each of the parties contends that the superior court abused its discretion in respect of that portion of the order from which her, or his, appeal is taken. And each of them relies upon the state Supreme Court's recent case of *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41].

The superior court was here called upon to exercise its "careful and reasoned judgment" in a most difficult and "delicate" field, thus to "effect substantial justice" to the parties of a wrecked marriage whose income was not reasonably calculated to support two households in the manner that it had supported one. (See *Morrison*, 20 Cal.3d, at p. 450; *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 422 [136 Cal. Rptr. 435].)

*Morrison* declared a state policy "that all supported spouses [of dissolved marriages] who were able to do so should seek employment." (20

Cal.3d, at p. 451.) "Limiting the duration of support so that both parties can develop their own lives, free from obligations to each other, is a commendable [judicial] goal." (*Id.*, p. 452.) ▋ And a spousal support order may, in a proper case, be fashioned so as to encourage such supportive self-reliance, and to discourage delay in preparation for or in seeking, or refusal of, available employment.

But present or future limitation, or termination, of spousal support must in all cases be reasonable; it may not be arbitrary or based upon speculation as to the supported spouse's future employment qualifications or opportunities. Instead, the trial court will follow the rule that: "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. ▋ In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction." (20 Cal.3d, at p. 453.) And in such a determination the court should consider ""practically everything that has a legitimate bearing"" upon the need for present and prospective support, including the spouses' ""ability to earn and actual earnings."" (*Id.*, pp. 454, 455.)

▋ Under these criteria we observe no abuse by the trial court, of judicial discretion. It had postponed to the future, "prior to September 30, 1981," on what will reasonably be deemed the better evidence of that day, determination of the delicate question whether to continue, or terminate, spousal support. It will be presumed that the court will then again consider, and apply, the rationale and rule of *Morrison.*

Nor do we observe discretionary abuse, as contended by Gudrun, in the superior court's choice of future termination *unless* she shall prior to September 30, 1981, make "a showing of good cause to extend spousal support beyond that date." On the record the court might have concluded it *probable* that Gudrun would be supportively self-sufficient at the designated time, and *reasonable* that she, with better access to relevant evidence, make a contrary showing. In such event the court will again be guided by *Morrison.*

We accordingly find no merit in the appeal of Gudrun.

A similar lack of merit is observed in the appeal of Henry, from the superior court's order modifying Gudrun's spousal support from $542 to $200 per month. Upon such a motion to modify spousal support the court has a wide discretion, and may consider "'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.'" (*Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249]; *In re Marriage of Siegel* (1972) 26 Cal.App.3d 88, 92 [102 Cal.Rptr. 613].) Under this test we find the modification order reasonable.

The superior court's order filed July 27, 1978, and entered August 14, 1978, is affirmed.

Racanelli, P. J., and Grodin, J., concurred.